Order, Supreme Court, New York County (Bernard J. Fried, J.), entered May 21, 2012, which, to the extent appealed from, granted defendant’s motion to dismiss the first, second and ninth counterclaims and so much of the third and fourth *445 counterclaims as is based on the anti-dilution provision of the parties’ agreements, unanimously modified, on the law, to deny the motion as to the parts of the first and second counterclaims that are based on defendant’s cancellation of the shares for which plaintiffs had already paid and as to the parts of the first, third, and fourth counterclaims that allege breach of the anti-dilution provision, and to allow plaintiffs to assert a breach of contract claim based on defendant’s failure to provide the financial statements required by the promissory notes it issued, and otherwise affirmed, without costs.
We decline to consider defendant’s argument that plaintiffs’ counterclaims to its surviving counterclaim are improper. First, defendant did not appeal from the September 2011 order permitting plaintiffs to file counterclaims. Second, in its motion to dismiss plaintiffs’ counterclaims, defendant did not argue that the counterclaims were procedurally impermissible. Third, defendant did not cross appeal from so much of the May 2012 order as denied its motion to dismiss (see Duran v Heller, 203 AD2d 414, 416 [2d Dept 1994], lv denied 84 NY2d 803 [1994]).
Contrary to plaintiffs’ contention, the motion court did not use a summary judgment standard in deciding defendant’s motion to dismiss. Neither did it impermissibly consider the affidavit by defendant’s CEO; rather, it considered the exhibits attached to the affidavit, such as the agreements between plaintiffs and defendant, which constitute documentary evidence (see 150 Broadway N.Y. Assoc., L.P. v Bodner, 14 AD3d 1, 5 [1st Dept 2004]).
However, the court erred when it interpreted a supposed lack of clarity in the pleadings against plaintiffs. The court dismissed so much of plaintiffs’ first and second counterclaims as was based on defendant’s cancellation of shares for which plaintiffs had already paid, on the ground that it was unclear if and when the shares were cancelled. However, defendant alleged in its counterclaim that, in April 2006, it cancelled all the notes and shares that had been issued to plaintiffs, as a result of plaintiffs’ defaults and refusal to cure.
The court dismissed the cancellation claim on the alternate ground that plaintiffs failed to allege any specific provision in the parties’ agreements that would prevent it from cancelling the shares. However, the agreements, which are governed by New York law, did not have to contain such a provision. Each agreement states, “The Shares, upon the issuance thereof, shall be validly authorized and validly issued, fully paid, and nonassessable” (emphasis added). Thus, these shares were shares “upon which no further payments [could] be demanded by the *446 company” (Middleton v Wooster, 184 App Div 165, 168 [1st Dept 1918]). Plaintiffs’ shares being “fully paid” “upon the issuance thereof,” defendant’s argument that plaintiffs failed to make additional payments is unavailing. Defendant points to no provision in the agreements that would permit it to cancel shares that it had already issued because plaintiffs failed to make later payments.
Furthermore, a share is the property of the shareholder, not of the corporation (Gilbert Paper Co. v Prankard, 204 App Div 83, 86 [3d Dept 1923]). Hence, the corporation has to reacquire the share to cancel it (In re Enron Creditors Recovery Corp., 407 BR 17, 40 [SD NY 2009], revd on other grounds 422 BR 423 [SD NY 2009], affd 651 F3d 329 [2d Cir 2011]). Defendant did not reacquire its stock before purporting to cancel it.
The anti-dilution provision of the parties’ agreements applies “so long as Investor [i.e., plaintiff] is not in breach of any of its obligations.” Although plaintiffs did not make all the payments required by the agreements, they claim that they withheld payment because defendant failed to provide them with the financial statements required by the notes.* Whether defendant’s breach excuses plaintiffs’ performance depends on whether the breach was material (see e.g. Unigard Sec. Ins. Co. v North Riv. Ins. Co., 79 NY2d 576, 581 [1992]). At this early, prediscovery stage, it cannot be determined as a matter of law that defendant’s failure to provide plaintiffs with financial statements was not a material breach.
Contrary to the motion court’s conclusion, plaintiffs alleged, “Defendant . . . , with limited exception, . . . failed to provide to Plaintiffs . . . updates, notices, or financial or audit statements as required by the Agreements. Defendant simply took Plaintiffs’ money and ‘cut them off.’ ” Accordingly, plaintiffs should be permitted to assert that defendant breached the parties’ contracts by failing to provide such statements.
The ninth counterclaim, which seeks an accounting, fails to state a cause of action, since it does not, and could not, allege a fiduciary relationship between plaintiffs and the corporation (see Trepuk v Frank, 104 AD2d 780, 781 [1st Dept 1984]; Stalker v Stewart Tenants Corp., 93 AD3d 550, 552 [1st Dept 2012]). Indeed, in their opening brief, plaintiffs stated that “[t]he relationship between a shareholder and a corporation is contractual” (citing Kun v Fulop, 71 AD3d 832, 834 [2d Dept 2010], lv denied 15 NY3d 701 [2010]). Nor does Business Corporation Law § 624 *447 avail plaintiffs. Even if, arguendo, the statute applied to defendant — a California corporation with its principal place of business in California (see Business Corporation Law § 103 [a])— inspection of books and records (see Business Corporation Law § 624 [b], [d]) and the furnishing of an annual balance sheet and profit and loss statement (see Business Corporation Law § 624 [e]) are not the same as an accounting. Concur — Mazzarelli, J.P., Renwick, DeGrasse, Freedman and Feinman, JJ.

 Since the notes and the agreements were part of the same transaction, they should be read together (see e.g. Gulf Ins. Co. v Transatlantic Reins. Co., 69 AD3d 71, 81 [1st Dept 2009]).